960 P.2d 919 (1998)
136 Wash.2d 136
Shirlee DeYOUNG, Appellant,
v.
PROVIDENCE MEDICAL CENTER; J.T. Griffin, M.D., his wife, and the marital community thereof; and Unknown John Does, Respondents.
No. 65373-9.
Supreme Court of Washington, En Banc.
Argued February 10, 1998.
Decided August 27, 1998.
Reconsideration Denied October 14, 1998.
*920 Bennett, Bigelow & Leedom, Elizabeth Leedom, Carol S. Janes, Seattle, Amicus Curiae on behalf of Washington Defense Trial Lawyers.
Bryan P. Harnetiaux, Harbaugh & Bloom, Gary N. Bloom, Debra Stephens, Daniel E. Huntington, Spokane, Amicus Curiae on behalf of Washington State Trial Lawyers Association.
Luvera, Barnett, Brindley, Beninger & Cunningham, Joel D. Cunningham, Seattle, James L. Holman & Assoc., Daniel W. Ferm, Tacoma, for Appellant.
Lee, Smart, Cook, Martin & Patterson, David L. Martin, Karen Kalzer, Wilson, Smith & Cochran, Kathy Cochran, David M. Jacobi, Seattle, for Respondents.
MADSEN, Justice.
Plaintiff Shirlee DeYoung appeals from summary judgment granted on the ground that the eight-year statute of repose in RCW 4.16.350(3) bars her negligence action. Plaintiff contends that the repose provision violates the privileges and immunities clause of the Washington State Constitution and denies access to the courts. We find the statute of repose unconstitutional because it violates the privileges and immunities clause. Accordingly, we reverse the summary judgment.

Facts
Ms. DeYoung alleges that Dr. J.T. Griffin negligently administered radiation treatment to her eyes in 1980 and that Providence Medical Center is liable for Dr. Griffin's malpractice under a theory of corporate negligence. She asserts that she learned in 1995 that the radiation treatment caused injury to her right eye, and learned in 1996 that her left eye was injured as well. She sued defendants in August 1996.
*921 Dr. Griffin and Providence moved for summary judgment, arguing that the eight-year repose provision in RCW 4.16.350(3) bars Ms. DeYoung's suit. Ms. DeYoung argued that the repose provision is unconstitutional. The trial court granted defendants motions and dismissed the action.
This court granted Ms. DeYoung's motion for direct review. The Washington State Trial Lawyers' Association and the Washington Defense Trial Lawyers have filed amici curiae briefs.

Analysis
Review of summary judgment is de novo, with the appellate court engaging in the same inquiry as the trial court. DeWater v. State, 130 Wash.2d 128, 133, 921 P.2d 1059 (1996). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

Privileges and Immunities
Plaintiff maintains that the eight-year statute of repose in RCW 4.16.350(3) violates the privileges and immunities clause of the Washington Constitution. She maintains that the provision arbitrarily denies the benefits of the discovery rule to a small class of adult medical malpractice claimants who cannot reasonably discover their injuries within eight years of the alleged negligent act or omission. RCW 4.16.350(3) provides that medical malpractice actions
shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission....
The state privileges and immunities clause, article I, section 12 of the Washington State Constitution, provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."
The initial inquiry is the standard of review which applies to plaintiff's privileges and immunities claim. Plaintiff first argues that settled law establishes that her article I, section 12 challenge should be assessed under a heightened scrutiny standard. She maintains that the court has already determined that heightened scrutiny applies where an important right or a semi-suspect class is involved, citing State v. Shawn P., 122 Wash.2d 553, 560, 859 P.2d 1220 (1993), and that this court has held that the right to be indemnified for personal injuries is a substantial individual property right, citing Hunter v. North Mason High Sch., 85 Wash.2d 810, 814, 539 P.2d 845 (1975). Under a heightened scrutiny standard, she maintains, the repose provision falls.
However, despite plaintiff's contention, it is not settled law that intermediate scrutiny applies in this case. In a number of recent cases we have held that intermediate scrutiny will be applied only where a statute implicates both an important right and a semi-suspect class not accountable for its status. E.g., State v. Schaaf, 109 Wash.2d 1, 17-18, 743 P.2d 240 (1987); In re Personal Restraint of Runyan, 121 Wash.2d 432, 448, 853 P.2d 424 (1993); Westerman v. Cary, 125 Wash.2d 277, 294, 892 P.2d 1067 (1994); Griffin v. Eller, 130 Wash.2d 58, 65, 922 P.2d 788 (1996). The group affected by the statute of repose is not a semi-suspect class. Included in the class barred by the eight-year statute of repose are those who choose not to bring an action, those who have slept on their rights, and those who have not diligently investigated their cause of action. Thus, many of the persons whose actions are barred by the repose provision are accountable for the fact that their claims are barred. Further, plaintiff has not explained what characteristics of the class identify it as a semi-suspect class.
Moreover, in Hunter, it is unclear what level of scrutiny the court applied, as noted later in Daggs v. City of Seattle, 110 Wash.2d 49, 56, 750 P.2d 626 (1988). Hunter involved a claims filing statute, and, as also indicated *922 in Daggs, more recent decisions suggest a minimum scrutiny analysis applies in assessing such statutes. Id. Thus, Shawn P. and Hunter do not justify a conclusion that Washington law is already settled that intermediate scrutiny applies in assessing plaintiff's privileges and immunities challenge.
Plaintiff next argues that the state constitution should be interpreted independently of the Equal Protection Clause and that under an independent state constitutional analysis heightened scrutiny should be applied. She presents a Gunwall argument in support of this contention. See State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). The first two Gunwall factors involve an analysis of the textual language of the state constitutional provision and a comparison of the federal equal protection clause and the state privileges and immunities clause. The court has recently noted that while there are differences in the provisions, these differences do not require an independent state analysis; "this court has repeatedly found these provisions substantially similar and treated them accordingly." Seeley v. State, 132 Wash.2d 776, 788, 940 P.2d 604 (1997) (citing cases). Plaintiff states, however, that the framers of the state constitution were primarily concerned with fundamental rights, and this concern is closely related to the judicial system's enforcement of those rights. While article I, section 1 does state the intent that governments are to establish and maintain rights, the state constitution goes on to enumerate constitutional rights in article I, sections 2-32 but does not include pursuit of a tort claim within those enumerated rights.
The third factor involves examination of the state constitutional and common law history of the privileges and immunities clause. See Gunwall, 106 Wash.2d at 65-66, 720 P.2d 808; Seeley, 132 Wash.2d at 788, 940 P.2d 604. Plaintiff reasons this factor neither favors nor disfavors independent analysis because such history is lacking. The fourth factor concerns preexisting state law. "Previously established bodies of state law, including statutory law, may also bear on the granting of distinctive state constitutional rights." Gunwall, 106 Wash.2d at 61, 720 P.2d 808. Plaintiff does not address the fourth factor. Providence argues that preexisting state law supports the principle that a boundary can be set which cuts off a tort claim regardless of when discovery of a cause of action occurs. Until 1969, when the court adopted the discovery rule for medical malpractice actions in Ruth v. Dight, 75 Wash.2d 660, 666, 453 P.2d 631 (1969), superseded by statute as stated in Teeter v. Lawson, 25 Wash.App. 560, 610 P.2d 925 (1980), a cause of action could accrue and the statute of limitations expire without a patient knowing of injury. E.g., Lindquist v. Mullen, 45 Wash.2d 675, 277 P.2d 724 (1954), overruled by Ruth v. Dight, 75 Wash.2d 660, 453 P.2d 631. Plaintiff does not dispute that this was the status of the law when the state constitution was enacted. Preexisting state law indicates that there is no bar to absolutely foreclosing a cause of action where one has been injured by medical malpractice.
Plaintiff maintains the fifth and sixth factors strongly favor independent state analysis. The fifth Gunwall factor addresses the structural differences between the state and federal constitutions. This factor always favors an independent state analysis. Seeley, 132 Wash.2d at 789-90, 940 P.2d 604. The sixth factor requires examining whether the subject matter is local in character or, alternatively, whether there appears to be need for national uniformity. Gunwall, 106 Wash.2d at 62, 720 P.2d 808. Plaintiff points to article I, section 1, which provides that the branches of government, including the judicial branch, "are established to protect and maintain individual rights" and urges that the right to be indemnified is a substantial property right, citing Hunter. She maintains that the right to a civil remedy in tort actions is a matter of state and not federal concern and whether the discovery rule can be denied to some but not all individuals is a matter of local concern. Providence concedes that both these factors favor independent state analysis.
Taken together, Plaintiff's arguments do not establish that an independent state constitutional analysis applying a heightened scrutiny standard is justified in this case. Therefore, we will use the rational basis analysis *923 applicable to the Equal Protection Clause. See Gossett v. Farmers Ins. Co., 133 Wash.2d 954, 979, 948 P.2d 1264 (1997).
Plaintiff contends that even under the rational basis standard, the eight-year repose provision is unconstitutional under article I, section 12. A legislative enactment survives a constitutional challenge under minimum scrutiny analysis if "`(1) ... the legislation applies alike to all members within the designated class; (2) ... there are reasonable grounds to distinguish between those within and those without the class; and (3)... the classification has a rational relationship to the proper purpose of the legislation.'" Griffin, 130 Wash.2d at 65, 922 P.2d 788 (quoting Convention Ctr. Coalition v. City of Seattle, 107 Wash.2d 370, 378-79, 730 P.2d 636 (1986)). Stated somewhat differently, under the rational basis standard the law must be rationally related to a legitimate state interest, and will be upheld unless the classification rests on grounds wholly irrelevant to the achievement of a legitimate state objective. Seeley, 132 Wash.2d at 795, 940 P.2d 604. "`The rational relationship test is the most relaxed and tolerant form of judicial scrutiny under the equal protection clause.'" State v. Heiskell, 129 Wash.2d 113, 124, 916 P.2d 366 (1996) (quoting Omega Nat'l Ins. Co. v. Marquardt, 115 Wash.2d 416, 431, 799 P.2d 235 (1990)).
As relaxed and tolerant as the rational basis standard is, however, the court's role is to assure that even under this deferential standard of review the challenged legislation is constitutional. In the rare case, unconstitutionality may be found; this is that rare case.
Plaintiff first maintains that the repose provision in RCW 4.16.350(3) singles out a subgroup of negligent practitioners and a corresponding subgroup of injured patients for special treatment in violation of article I, section 12.[1] She reasons that as a result of tolling and other provisions, the eight-year statute of repose does not apply uniformly to all persons who discover their malpractice claims over eight years after the malpractice occurred. She further reasons that the repose provision is fundamentally unfair because a very small subgroup created by default is arbitrarily denied the benefit of the one-year discovery rule in RCW 4.16.350(3).[2]
The eight-year statute of repose does not apply to bar malpractice claims of all persons discovering their cause of action over eight years after the act or omission alleged to have caused injury. The time for commencement of an action is tolled upon proof of fraud or intentional concealment, as well as where a foreign body not intended to have therapeutic or diagnostic purpose or effect is left inside the patient. RCW 4.16.350(3) The time is also tolled in the case of minors. Gilbert v. Sacred Heart Med. Ctr., 127 Wash.2d 370, 900 P.2d 552 (1995). Tolling also occurs for the time a patient is incompetent or disabled to a degree that he or she cannot understand the nature of the proceedings. RCW 4.16.190. Further, under the present statutes, tolling occurs for the period of time a person is imprisoned on a criminal charge prior to sentencing. RCW 4.16.190. By its terms, RCW 4.16.350(3) does not apply to actions against health care providers for damages for injury where the claim is based upon intentional conduct and childhood sexual abuse as defined in RCW 4.16.340(5).
Although not all claims of persons who discover their malpractice actions over eight years after the alleged malpractice are subject to the eight-year statute of repose, we do not agree that the group of persons to whose *924 claims the repose provision applies was created arbitrarily. There are reasonable grounds for the tolling and other statutory provisions which except a cause of action from the eight-year bar, and thus reasonable grounds for the distinctions between the persons affected by those provisions and those who are not. Minors are not similarly situated to adults because they are unable to pursue an action on their own until adulthood, RCW 4.08.050, and they generally lack the experience, judgment, knowledge and resources to effectively assert their rights. Tolling in the case of fraud or intentional concealment is reasonable because the certainty and protection from stale claims a repose statute provides should not be extended to benefit those who by their wrongful acts prevent timely filing of a cause of action. Cases where foreign objects are left in the claimant's body present the clearest cases of malpractice with the result that evidentiary problems are of lesser concern than in other cases. A person incompetent or disabled to the extent that he or she is unable to understand the nature of the proceedings is not similarly situated to those adults who are competent to assert their rights and assist in a malpractice action. Inapplicability of the eight-year repose period to actions against health care providers for damages for injury where the claim is based upon intentional conduct and childhood sexual abuse as defined in RCW 4.16.340(5) is also based upon reasonable grounds. The Legislature has found that victims of childhood sexual abuse may suffer from repressed memory of the abuse, may be unable to understand or make the connection between injury and such abuse until years later, and may discover more serious injuries years after awareness of some injury. Laws of 1991, ch. 212, § 1. In view of such concerns, the Legislature has enacted limitations and discovery periods specifically applicable to actions based upon child sexual abuse involving intentional conduct. RCW 4.16.340. Where the gravamen of the action is such abuse, the limitations in RCW 4.16.340 apply even if health care, within the meaning of RCW 4.16.350, is also involved. The fact that child sexual abuse forms the grounds for the action distinguishes such cases from most medical malpractice actions, which fall within the ambit of RCW 4.16.350. There are reasonable grounds for the distinction between actions covered by the statute of repose and those which are not.
Plaintiff next contends that the classification of medical malpractice claims which are subject to the eight-year statute of repose does not bear a rational relationship to the purpose of the statute. We agree.
The eight-year statute of repose was enacted in 1976 in response to a perceived insurance crisis said to result from the discovery rule and from increased medical malpractice claims, which allegedly created problems in calculating and reserving for exposure on long-tail claims. Laws of 1975-76, 2d Ex.Sess., ch. 56. Insurers asserted that because of this "long tail effect" and other reasons, much higher medical malpractice liability insurance premiums were required to cover present and future claims against health care practitioners. Christopher J. Trombetta, Note, The Unconstitutionality of Medical Malpractice Statutes of Repose: Judicial Conscience Versus Legislative Will, 34 Vill. L.Rev. 397, 404-06 (1989). By enacting an eight-year statute of repose, the Legislature intended to protect insurance companies while "hopefully not result[ing] in too many individuals not getting compensated." House Journal, 44th Legis. Sess. 318 (1976) (comment by Representative Walt O. Knowles).
In addressing plaintiff's challenge, we are mindful that "[t]he rationality of a classification does not require production of evidence to sustain the classification; it is not subject to courtroom fact-finding." Gossett, 133 Wash.2d at 979, 948 P.2d 1264 (citing Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). Indeed, the rational basis standard may be satisfied where the "legislative choice ... [is] based on rational speculation unsupported by evidence or empirical data." F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). We also do not quarrel with defendants' contention that the Legislature could rationally speculate that protection of the medical malpractice insurance industry was needed to alleviate or *925 avert a malpractice insurance crisis. When the Legislature enacted the repose provision, decreased availability of malpractice insurance and increased malpractice insurance premiums were widely viewed as a threat to the nation's health care system. Among materials before the Legislature was a 1975 report of the Washington State Medical Association Professional Liability Insurance Program to the Insurance Committee, at 1, which stated in its introduction that although a crisis in the professional liability market in Washington had up to that time been prevented, the situation had worsened and reached a critical stage in many states. Clerk's Papers (CP) at 65. Also before the Legislature was a Medical Malpractice Report prepared by the Washington State Bar Association for the Board of Governors in December 1975 which noted, at vi, that premiums for specified classes of physicians had doubled and tripled between 1972 and 1976. CP at 89. This report also noted that information from Aetna Life and Casualty Insurance Company indicated substantial increases in losses paid out between 1972 and 1974. Id.[3] The Legislature could rationally surmise that, even if a crisis did not then exist in Washington, one was likely.
The difficulty with the legislation, however, is that materials before the Legislature also showed that an eight-year repose provision could not rationally be thought to have any chance of actuarially stabilizing the insurance industry even if an insurance crisis did exist and even if every state adopted an eight-year statute of repose. Among other documents before the Legislature was a 1975 report by the National Association of Insurance Commissioners (NAIC). That report discloses, based upon a study of 3,247 claims nationwide, that less than one percent (plaintiff's calculations show about ½ of 1 percent) of the claims were those of adults reported over 8 years after the incidents of malpractice. According to plaintiff's calculations, of the total of $24,446,469 paid in indemnity on all claims, less than .2 percent was paid for claims reported over eight years after the incidents of malpractice.
A repose provision affecting so few claims and involving such a small amount of what insurers were paying could not possibly have any meaningful impact on the medical malpractice insurance industry, much less when only claims of the type subject to Washington's eight-year repose provision are considered. The eight-year statute of repose could not avert or resolve a malpractice insurance crisis.
We are aware that "the Legislature may constitutionally approach" a problem "one step at a time." Griffin, 130 Wash.2d at 66, 922 P.2d 788; see Beach Communications, Inc., 508 U.S. at 316, 113 S.Ct. 2096 ("`[t]he legislature may select one phase of one field and apply a remedy there, neglecting the others'") (quoting Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955)). However, the relationship of a classification to its goal must not be so attenuated as to render the distinction arbitrary or irrational. Nordlinger v. Hahn, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Haves v. City of Miami, 52 F.3d 918, 922 (11th Cir.1995); Margola Assocs. v. City of Seattle, 121 Wash.2d 625, 651, 854 P.2d 23 (1993); Foley v. Department of Fisheries, 119 Wash.2d 783, 788, 837 P.2d 14 (1992). The relationship between the goal of alleviating any medical insurance crisis and the class of persons affected by the eight-year statute of repose is too attenuated to survive rational basis scrutiny.
Defendants additionally argue, though, that the repose provision is constitutional under another conceivable set of factsit rationally furthers the legitimate goal of repose for defendants and the barring of stale claims which are more difficult to establish because evidence may be lost or gone. As noted, compelling a defendant to answer a stale claim is a substantial wrong, Ruth, 75 Wash.2d at 665, 453 P.2d 631, and setting an outer limit to operation of the discovery rule is an appropriate aim, Ruth, 75 Wash.2d at *926 664-66, 453 P.2d 631; see Gazija v. Nicholas Jerns Co., 86 Wash.2d 215, 217, 543 P.2d 338 (1975). The goal is a legitimate one. Again, however, the minuscule number of claims subject to the repose provision renders the relationship of the classification too attenuated to that goal.
We hold that the eight-year statute of repose in RCW 4.16.350(3) violates the privileges and immunities clause of the state constitution.[4] In light of our holding, we decline to reach the additional argument raised by plaintiff, i.e., that the eight-year repose provision violates access to the courts provisions of the state constitution. The summary judgment is reversed and this matter is remanded for further proceedings.
DOLLIVER, SMITH, JOHNSON and SANDERS, JJ., concur.
ALEXANDER, Justice (dissenting).
Twenty-two years after the Legislature enacted the statute of repose at issue here, a majority of this court holds that the statute violates the privileges and immunities clause of our state's constitution. Because I believe that the statute meets the test of constitutionality under the permissive rational basis test, even applying the facts set forth in the majority opinion, I respectfully dissent.
The majority correctly finds that a rational basis analysis is to be applied here, which it concedes is the most deferential standard of reviewresulting in a finding of unconstitutionality for challenged legislation only in the "rare case." Majority op. at 923. Under that test legislation is constitutional "if there is any conceivable set of facts" to justify the legislation. Gossett v. Farmers Ins. Co., 133 Wash.2d 954, 979, 948 P.2d 1264 (1997) (citing Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)).
Statutes of limitations and repose are justified because they guard against untrustworthy evidence, stale claims, and undue burdens placed on defendants. See Douchette v. Bethel School Dist. No. 403, 117 Wash.2d 805, 813, 818 P.2d 1362 (1991); Duffy v. King Chiropractic Clinic, 17 Wash.App. 693, 697, 565 P.2d 435 (1977), review denied, 89 Wash.2d 1021 (1978). The majority concedes this point, but concludes that the statute runs afoul of the constitution because the small number of claims subject to the repose provision renders the legislation too remote from its purpose. Majority op. at 926. Yet, guarding against untrustworthy evidence, stale claims, and undue burdens placed on defendants, for even the fewest of claims, provides the required conceivable set of facts to give the statute a rational basis.
Sympathy for the plaintiff in this case, and those similarly situated, is not enough to compel this court to jump into a time machine and undo what was done by the Legislature 22 years ago. As former Justice Utter once wrote "[h]ard cases make bad law." State v. Shoemaker, 85 Wash.2d 207, 215, 533 P.2d 123 (1975) (Utter, J., dissenting). This case appears to offer a clear illustration of that maxim. This court cannot, after all, legislateno matter how admirable its objectives might be in doing so. Rather, it is the Legislature itself that must provide the legislative remedy for Shirlee DeYoung and others similarly situated that is required here. For this reason, I would affirm the trial court. Because the majority does otherwise, I must dissent.
NOTES
[1] Plaintiff concedes that a general statute of repose applying to all tort claims would not violate Const., art. I, § 12.
[2] The discovery rule was adopted for medical malpractice actions in Ruth v. Dight, 75 Wash.2d 660, 665, 453 P.2d 631 (1969), where the court reasoned that "fundamental fairness" and "the common law's purpose to provide a remedy for every genuine wrong" are not served when a statute of limitations passes before the injured party "would not in the usual course of events know he had been injured until long after the statute of limitations had cut off his legal remedies[.]" Ruth construed former RCW 4.16.010 and RCW 4.16.080(2), which then provided a three year accrual-based statute of limitations for medical malpractice actions, as providing that a medical malpractice action might accrue upon discovery. In response to Ruth, the Legislature enacted RCW 4.16.350 in 1971, and provided for a one-year discovery rule. Laws of 1971, ch. 80, § 1.
[3] The report noted part of the increase was due to an increase in the number of physicians covered by the company.
[4] The parties have cited a number of out of state opinions addressing the constitutionality of medical malpractice statutes of repose. A clear majority of courts have upheld such statutes. See generally, Christopher J. Trombetta, Note, The Unconstitutionality of Medical Malpractice Statutes of Repose: Judicial Conscience Versus Legislative Will, 34 Vill. L.Rev. 397 (1989) (and cases cited therein); William C. Koch, Jr., Reopening Tennessee's Open Courts Clause: A Historical Reconsideration of Article I, Section 17 of the Tennessee Constitution, 27 U. Mem. L.Rev. 333, 441-42 (1997) (and cases cited therein); Josephine Herring Hicks, The Constitutionality of Statutes of Repose: Federalism Reigns, 38 Vand. L.Rev. 627 (1985) (and cases cited therein). It is difficult to draw generalizations because the cases involve both state and federal constitutional claims, including equal protection, due process, uniformity of laws, special legislation, and access to the courts/right to remedy claims. Further, the statutes vary widely, with some having discovery rule provisions, others not having discovery rule provisions, some constituting an absolute bar to all claims while others, as Washington's, contain exceptions.