[No. 84707-0. En Banc.]
Argued February 8, 2011. Decided July 21, 2011.

LISA UNRUH, *Appellant*, v. DINO CACCHIOTTI ET AL.,
*Respondents*.

*Paul W. Whelan, Ray W. Kahler,* and *Garth L. Jones* (of *Stritmatter Kessler Whelan Coluccio*), for appellant.

*Christopher H. Howard, Mary Jo Newhouse, Jennifer L. Campbell,* and *Averil B. Rothrock* (of *Schwabe Williamson & Wyatt PC*), for respondents.

*Stewart A. Estes, Melissa O'Loughlin White, Herbert M. Munson,* and *Aaron P. Riensche* on behalf of Washington Defense Trial Lawyers, amicus curiae.

*Bryan P. Harnetiaux* and *George M. Ahrend* on behalf of Washington State Association for Justice Foundation, amicus curiae.

*Mary H. Spillane* on behalf of Washington State Medical Association, American Medical Association, and Physicians Insurance A Mutual Company, amici curiae.

¶1 STEPHENS, J. — This case concerns the proper interpretation of the 2006 statute of limitations and statute of repose applicable to claims for medical malpractice. Lisa Unruh filed a lawsuit against her orthodontist, Dr. Dino Cacchiotti, alleging that his negligent treatment when she was a minor resulted in her losing her teeth and undergoing extensive implant surgery. Cacchiotti moved for summary judgment under the statute of limitations and prevailed. At the Court of Appeals, Cacchiotti raised an alternative ground for dismissing Unruh's claim based on the eight-

year statute of repose. After requesting supplemental briefing, the Court of Appeals certified the case for our review. We reverse the trial court and hold that neither the statute of limitations nor the statute of repose bars Unruh's claim.

## FACTS AND PROCEDURAL HISTORY

1. Negligence Claim

¶2 Lisa Unruh was born on January 3, 1986. When she was nine years old, Unruh began seeing Cacchiotti. Unruh suffered from a severe underbite that resulted from her lower jaw growing faster than her upper jaw. To alleviate this and other problems, Cacchiotti began a treatment plan involving braces. Cacchiotti first placed braces on Unruh's upper teeth in 1995 and later added them to her lower teeth in 1996. Cacchiotti removed the braces in August 1999. Unruh had her final follow-up visit in November 2000.[1]

¶3 During Cacchiotti's treatment of Unruh, the roots of several of her teeth were resorbed[2] when her permanent teeth erupted into the path of the roots. As a result of the root resorption, Unruh eventually lost many of her permanent teeth and had to have implant surgery.

¶4 Unruh's father learned from a dentist who was treating Unruh's stepmother that the braces may have caused Unruh's root resorption. According to Unruh's stepmother, when she asked Cacchiotti about the likely cause, he told her that some people are not meant to have braces and that Unruh should not have had braces because they were destroying her roots. Unruh's stepmother testified that she did not suspect Cacchiotti had done anything wrong but instead assumed that the braces had simply exacerbated a genetic predisposition to root resorption.

---

[1] Unruh received further treatment from Cacchiotti beginning in November 2002 to prepare her mouth for jaw surgery with another doctor. Unruh does not base her negligence claim on this later treatment.

[2] "[R]esorb" means "to swallow or suck in again." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1934 (2002).

¶5 Over the next several years, a number of different doctors told Unruh that her prior orthodontic care caused her root resorption. In March 2006, Unruh and her stepmother met with Dr. Ronald Bryant, who presented a slide show on tooth implants. According to Unruh's stepmother, it was at this appointment that she asked Bryant why Unruh's teeth were falling out:

> I said, "Why are her teeth falling out?" I said, "Was it something hereditary?" And he said, "No, she has root reabsorption [sic]."
>
> And I said, "What does that mean? I have no idea." And he said, "It is caused from braces being put on and kept on too long. This is what the cause of root reabsorption [sic] is." And I said, "Okay. So this wasn't a birth defect or" - I said - he said, "No, that was the cause of her loss of teeth." And I said, "Okay. Thank you."

Clerk's Papers (CP) at 244-45. At that point, according to Unruh's stepmother, the family realized for the first time that Cacchiotti may have done something wrong. They decided to consult an attorney.

### 2. 2006 Legislation

¶6 On June 7, 2006, the legislature enacted two statutes related to claims for medical malpractice. FINAL B. REP. on Second Substitute H.B. 2292, at 8, 59th Leg., Reg. Sess. (Wash. 2006) (noting effective date of legislation). RCW 4.16.350, which contains the statute of limitations for medical malpractice claims, was amended to include an eight-year statute of repose. LAWS OF 2006, ch. 8, §§ 301-02. The amendment was a response to *DeYoung v. Providence Medical Center*, 136 Wn.2d 136, 150, 960 P.2d 919 (1998), in which this court struck down a prior version of the medical malpractice statute of repose under the privileges and immunities clause of article I, section 12 of the Washington State Constitution.

¶7 The legislature also amended RCW 4.16.190, the general provision that tolls statutes of limitations for minor

plaintiffs in civil actions, including cases of medical malpractice. *Gilbert v. Sacred Heart Med. Ctr.*, 127 Wn.2d 370, 375, 900 P.2d 552 (1995) (construing former RCW 4.16.190 (1993) to toll the statute of limitations for minor plaintiffs in medical malpractice cases). The 2006 amendment to RCW 4.16.190 specifically eliminated tolling for minors in medical malpractice cases. LAWS OF 2006, ch. 8, § 303.

### 3. Trial Court and Court of Appeals Proceedings

¶8 After obtaining counsel, on November 16, 2006 Unruh sent Cacchiotti a 90-day notice of intent to sue under former RCW 7.70.100 (2006). Cacchiotti's insurance representative responded, and Unruh's counsel and the representative began discussing resolution of the case. Unruh turned 21 on January 3, 2007. A few days later, on January 12, Unruh's counsel sent a letter to Cacchiotti's insurance representative requesting mediation under RCW 7.70.110. The insurance representative responded by letter, stating, "You have requested mediation based on RCW 7.70.100, and, therefore, we agree that the statute of limitations is tolled for one year by RCW 7.70.110." CP at 318. The parties agreed to mediate the dispute and set a date for September 2007. Before the parties could meet, Cacchiotti backed out of the mediation. Unruh filed her negligence lawsuit on September 27, 2007.

¶9 Cacchiotti moved for summary judgment based on the statute of limitations, RCW 4.16.350(3).[3] The trial court granted summary judgment to Cacchiotti, finding no genuine issue of material fact and that the statute of limitations had expired. CP at 345-49. Unruh appealed.

¶10 At the Court of Appeals, Unruh initially focused her argument on the statute of limitations' one-year discovery

---

[3] RCW 4.16.350(3) states that an action

based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later . . . .

period. She argued she did not discover Cacchiotti's breach of duty until the March 2006 visit with Bryant. She acknowledged discovering before that time that the braces caused her root resorption, but she believed her injury resulted from a combination of her braces and a genetic predisposition to root resorption, not her braces and Cacchiotti's negligence. Until the notion of a genetic predisposition was dispelled by Bryant, Unruh did not suspect Cacchiotti had done anything wrong.

¶11 In his response, Cacchiotti argued that the three-year limitations period expired before Unruh filed suit in September 2007. He also argued that Unruh's claim was not saved by the discovery rule because she learned about her cause of action more than one year before filing the lawsuit. Alternatively, Cacchiotti argued that, even assuming Unruh did not discover her claim until the March 2006 visit with Bryant, the claim was still untimely because the request for mediation under RCW 7.70.110 was defective and thus did not toll the limitations period.[4] In another alternative argument, Cacchiotti contended that, even assuming the request for mediation effectively tolled the one-year discovery period, the lawsuit was still untimely under the newly reenacted eight-year statute of repose.

¶12 The Court of Appeals requested supplemental briefing from both parties on the effect of the statute of repose on this court's decision in *DeYoung*. The court also requested briefing regarding the effect of the 2006 nontolling amendment to RCW 4.16.190 on this court's decision in *Gilbert*. In her supplemental brief, Unruh raised constitutional challenges to the 2006 legislation, though she asserted that the case could be resolved on statutory grounds.[5] The Court of

---

[4] Without being tolled by RCW 7.70.110, the one-year discovery period would have expired in March 2007, approximately six months before Unruh filed her lawsuit.

[5] Several organizations filed amicus briefs addressing the constitutional questions. They include Washington State Medical Association, American Medical Association, and Physicians Insurance A Mutual Company (WSMA et al.);

Appeals certified the case to this court, and we retained it for direct review.

¶13 The parties' briefing provides varying time lines of the events in this case. The following dates are relevant:

| | |
|---|---|
| Aug. 1999 | Cacchiotti removes Unruh's braces |
| Nov. 2000 | Unruh's final visit with Cacchiotti |
| Jan. 3, 2004 | Unruh Turns 18 |
| June 7, 2006 | Legislature(1) reenacts the eight-year medical malpractice statute of repose and (2) amends RCW 4.16.190 to eliminate tolling for minors in medical malpractice cases |
| Nov. 16, 2006 | Unruh serves 90-day notice of intent to sue |
| Jan. 3, 2007 | Unruh turns 21 |
| Jan. 12, 2007 | Unruh sends request for mediation |
| Sept. 27, 2007 | Unruh files lawsuit |

## ANALYSIS

¶14 The sole question in this case is whether Unruh's claim for medical malpractice was timely filed. This question breaks down into two parts. First, did Unruh file her claim within the statute of limitations? Second, is Unruh's claim barred by the statute of repose? Because Cacchiotti initially argues that Unruh's claim is barred by the statute of limitations, we turn first to that issue. We review de novo an order granting summary judgment. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

Washington State Association for Justice Foundation; and Washington Defense Trial Lawyers.

I. Timeliness of Unruh's Claim under the Statute of Limitations

¶15 The statute of limitations for medical malpractice claims consists of two limitations periods: a three-year period and a one-year discovery period. RCW 4.16.350(3). Cacchiotti argues that Unruh filed her claim more than three years after the last alleged act or omission, three years after Unruh's 18th birthday, and one year after Unruh discovered she had a cause of action. At the Court of Appeals, Unruh's opening brief focused on application of the discovery rule rather than the three-year limitations period. There is no need to consider the discovery rule, however, if Unruh's claim is timely under the three-year statute of limitations. So, our analysis begins there.

 ¶16 The three-year limitations period commences at the time of the last act or omission that allegedly caused the injury. *See Caughell v. Grp. Health Coop. of Puget Sound*, 124 Wn.2d 217, 229, 237 n.6, 876 P.2d 898 (1994). In this case, the alleged negligence began in 1995 when Cacchiotti applied braces to Unruh's teeth, and it continued until at least August 1999 when the braces were removed. Although Unruh continued seeing Cacchiotti until November 2000, the alleged negligence appears to have ceased in August 1999 with the removal of the braces. We will assume for purposes of analysis that the limitations period was triggered in August 1999.[6]

██ ¶17 Although the three-year limitations period began running in August 1999, it was immediately tolled due to Unruh's minority. The tolling statute in effect at the time,

---

[6] At the trial court, Cacchiotti maintained that the allegedly negligent conduct continued until November 2000, when Unruh had her last appointment with Cacchiotti. CP at 32. At the Court of Appeals, Cacchiotti altered this timeline to say the allegedly negligent conduct ceased in August 1999, when Cacchiotti removed Unruh's braces. Resp'ts' Br. at 4. It makes no difference to our analysis of the statute of limitations. However, if the effective date is November 2000, then even under Cacchiotti's statutory argument, the eight-year statute of repose would not bar Unruh's claim, as the repose period would not have expired until November 2008.

former RCW 4.16.190, tolled the statute of limitations for minors in medical malpractice cases. *Gilbert*, 127 Wn.2d at 375. Unruh turned 18 on January 3, 2004, and the three-year limitations period began running on that date.

■ ■ ¶18 On November 16, 2006, Unruh served Cacchiotti with a 90-day notice of intent to sue, which extended the time for filing the lawsuit for 90 days. Former RCW 7.70.100(1).[7] On January 12, 2007, within the 90-day window, Unruh made a request for mediation under RCW 7.70.110, which tolled the three-year limitations period for an additional year. On September 27, 2007, within the one-year tolling window, Unruh filed her claim. The lawsuit was therefore timely under the three-year limitations period.

¶19 Cacchiotti takes issue with every step of this analysis. First, he argues that the 2006 nontolling amendment to RCW 4.16.190 eliminated the effect that Unruh's minority had on tolling the statute of limitations. Second, Cacchiotti argues that, even if the statute of limitations was tolled during Unruh's minority, the 90-day notice of intent to sue did not bridge the gap between the time when the three-year limitations period would have expired (January 3, 2007) and when she sent her request for mediation (January 12, 2007). Third, he argues that, even if the statute of limitations was tolled until Unruh sent her request for mediation, the request itself did not toll the limitations period for an additional year because it was defective. None of Cacchiotti's points is winning.

A. Prospective Effect of the 2006 Nontolling Amendment to RCW 4.16.190

¶20 On June 7, 2006, the legislature amended RCW 4.16.190 to eliminate tolling for minors in medical malpractice cases. LAWS OF 2006, ch. 8, § 303. At that time, Unruh

---

[7] The provision of former RCW 7.70.100 requiring a 90-day notice of intent to sue was recently invalidated by this court based on separation of powers. *Waples v. Yi*, 169 Wn.2d 152, 158-61, 234 P.3d 187 (2010). It was a statutory requirement at the time Unruh served her notice.

was no longer a minor. Cacchiotti nonetheless argues that the amendment applies retroactively to eliminate tolling during Unruh's minority.[8] We disagree.

¶21 A statute that imposes a new limitations period is presumed to run prospectively, unless the legislature intends otherwise. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 584, 146 P.3d 423 (2006). Thus, when a claim accrues before the statute goes into effect, the new limitations period begins to run on that claim from the effective date of the statute's enactment. *Hanford v. King County*, 112 Wash. 659, 662, 192 P. 1013 (1920) ("[T]he limitation of the new statute, as applied to pre-existing causes of action, commences when the cause of action is first subjected to the operation of the statute . . . ."); *Merrigan v. Epstein*, 112 Wn.2d 709, 717, 773 P.2d 78 (1989) (" '[T]he new limitations law operates . . . on causes of action which accrued prior to the change in law, but the new period of limitation starts to run from the effective date of the statute which makes the change.' " (emphasis omitted) (quoting Lewis H. Orland & David G. Stebing, *Retroactivity in Review: The Federal and Washington Approaches*, 16 GONZAGA L. REV. 855, 882 (1981))); *Torkelson v. Roerick*, 24 Wn. App. 877, 879, 604 P.2d 1310 (1979) ("[A] new statutory limitation may operate on a claim that has accrued prior to the amendment of the statute of limitation by beginning to run as of the effective date of the amended statute."). " 'Th[is] same principle has been applied to tolling statutes.' " *Merrigan*, 112 Wn.2d at 717 (quoting Orland & Stebing, *supra*, at 882).

¶22 Our analysis in *Hanford* is illustrative. Hanford suffered injuries on March 1, 1919 when he was struck by a vehicle owned and operated by King County. *Hanford*, 112 Wash. at 659-60. On June 11, 1919, the legislature enacted

---

[8] Cacchiotti does not actually use the term "retroactive." He says the nontolling amendment (and the statute of repose) applies prospectively. Resp'ts' Suppl. Br. at 7-9. It is clear, however, that in substance he means the applicable statutes apply retroactively in that they began operating on Unruh's claim in August 1999, seven years prior to their enactment. *Id.* at 10, 17.

a new law requiring plaintiffs to present claims of damages to the board of county commissioners within 60 days of the claim's accruing. *Id.* at 660-61. If the claim was not timely presented, the plaintiff could not file a lawsuit. *Id.* at 661. Hanford did not properly present his claim to the King County board of commissioners until June 28, almost 120 days after his claim had accrued. *Id.* at 660. Still, we rejected the argument that Hanford was barred from pursuing his claim. *Id.* at 662. We held that the new statute applied to Hanford's claim prospectively and that the 60-day period was not triggered until the date of the statute's enactment, June 11, 1919. *Id.* In other words, Hanford "had sixty days after the statute went into effect in which to file a claim." *Id.*

¶23 The same rule was applied to a new tolling provision in *Torkelson*. 24 Wn. App. at 879. Torkelson turned 18 in October 1970 and was injured in an automobile accident a few months later. *Id.* at 878. At the time of the accident, RCW 4.16.190 tolled the statute of limitations until a plaintiff reached the age of 21. *Id.* But in August 1971, the legislature amended RCW 4.16.190 to eliminate tolling after the age of 18. *Id.* at 878-79. The court held that the new tolling provision applied to Torkelson's claim prospectively. *Id.* at 880. Even though Torkelson turned 18 back in October 1970 and was injured shortly thereafter, the court held that the amended statute's elimination of tolling did not operate on her claim until the date of enactment, i.e., August 1971. *Id.* Torkelson therefore received the full three years from August 1971 to file her claim under the statute of limitations. *Id.*

¶24 The application of this rule to the present case is straightforward. Unruh's claim accrued in August 1999 when Cacchiotti removed her braces, but former RCW 4.16.190 immediately tolled the statute of limitations because Unruh was a minor. On January 3, 2004, Unruh turned 18 and the three-year limitations period began to run. Though the legislature eliminated tolling for minors in

medical malpractice cases in 2006, the amendment operates on Unruh's claim only from the date of enactment. The amendment cannot reach back in time to eliminate the effect of Unruh's minority in tolling the statute of limitations between August 1999 and the time she turned 18 in January 2004. Because Unruh was already an adult by the time the legislature eliminated tolling for minors in 2006, the nontolling amendment simply has no effect on her claim.

¶25 Cacchiotti does not cite any evidence of legislative intent indicating that the nontolling amendment to RCW 4.16.190 should apply retroactively, particularly when the effect would be to undo what was already accomplished under the former law. We hold that the nontolling amendment to RCW 4.16.190 applies from the date of its enactment and does not eliminate tolling during Unruh's minority.[9]

### B. Tolling of the Statute of Limitations by 90-Day Notice of Intent To Sue

¶26 Under former RCW 7.70.100, Unruh was required to serve Cacchiotti with a 90-day notice of intent to sue before filing her lawsuit. The statute is clear that service of the notice of intent to sue extends the time for commencing the action: "If the notice is served within ninety days of the expiration of the applicable statute of limitations, the time for the commencement of the action must be extended ninety days from the service of the notice." Former RCW 7.70.100(1).

¶27 Unruh served Cacchiotti with the 90-day notice of intent to sue on November 16, 2006. The three-year limitations period was set to expire on January 3, 2007, less than

---

[9] Because we hold that the 2006 nontolling amendment to RCW 4.16.190 does not eliminate tolling during Unruh's minority, we need not reach her alternative arguments that the amendment violates the constitutional right of access to courts as well as the privileges and immunities clause of article I, section 12. While we do not decide this case on constitutional grounds, in *Gilbert* we indicated that the categorical elimination of tolling for minors would give rise to "compelling" constitutional challenges. 127 Wn.2d at 378.

three months later. Accordingly, service of the notice of intent to sue tolled the statute of limitations for 90 days from the date of service, or until the middle of February 2007.

¶28 At oral argument before this court, Cacchiotti asserted that the notice of intent to sue did not toll the statute of limitations because it would require us to "stack" separate tolling provisions. In Cacchiotti's view, the statute of limitations cannot be tolled by both the notice of intent to sue *and* the later request for mediation. We reject this novel and unsupported proposition.

¶29 The statute of limitations for medical malpractice cases in RCW 4.16.350(3) contains no prohibition against tolling by one or more separate statutory provisions. Had the legislature intended such a restriction, it could have included one. *See, e.g.*, RCW 11.40.051(2) (prescribing limitations period for claims against a decedent and noting that "[a]n otherwise applicable statute of limitations applies *without regard to the tolling provisions* of RCW 4.16.190" (emphasis added)). Moreover, neither the statute governing notice of intent to sue, former RCW 7.70.100, nor the statute governing request for mediation, RCW 7.70.110, purports to serve as the exclusive tolling provision for medical malpractice cases. Restricting tolling to only one of these statutes would ignore the sound policy that underlies application of other applicable tolling provisions. Unruh's notice of intent to sue under former RCW 7.70.100 tolled the statute of limitations for 90 days.

C. Tolling of the Statute of Limitations by the Request for Mediation

¶30 Even though the statute of limitations was tolled due to Unruh's minority and her 90-day notice of intent to sue, she still needs the tolling provided by her request for

mediation in order for her action to be timely.[10] Cacchiotti does not dispute that, as a general proposition, a request for mediation under RCW 7.70.110 tolls the statute of limitations for one year. He argues, however, that Unruh's request was defective because she served it on his insurance representative rather than on him personally. This argument requires us to interpret RCW 7.70.110 to decide whether a request for mediation can toll the statute of limitations when it is not served directly on the defendant.

■ ¶31 In any question of statutory construction, we strive to ascertain the intention of the legislature by first examining a statute's plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the statute's meaning is plain on its face, then we give effect to that meaning as an expression of legislative intent. *Id.* "Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007) (citing *Campbell & Gwinn*, 146 Wn.2d at 9-12).

¶32 RCW 7.70.110 states in its entirety:

> The making of a written, good faith request for mediation of a dispute related to damages for injury occurring as a result of health care prior to filing a cause of action under this chapter shall toll the statute of limitations provided in RCW 4.16.350 for one year.

Cacchiotti argues that it would be unreasonable to interpret RCW 7.70.110 to permit a request for mediation on anyone other than the defendant. Unruh counters that, because the statute does not specify to whom a request must be made, it is reasonable to interpret RCW 7.70.110 to allow a request on the defendant or the defendant's authorized agent.

---

[10] Unruh's minority and the 90-day notice of intent to sue tolled the statute of limitations only until the middle of February 2007, and Unruh filed her lawsuit in September 2007.

¶33 The unstated but apparent purpose of RCW 7.70.110 is to facilitate settlement of disputes through mediation. Implicit in this purpose is the notion that the defendant receives notice of the request for mediation. Nothing in the plain language of the statute restricts the method of giving notice to personally serving a request for mediation on the prospective defendant. Cacchiotti's argument thus requires us to stray from settled principles of statutory construction and read into RCW 7.70.110 a limiting requirement that is not present. *Cf. Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003) (noting that we will not "add words where the legislature has chosen not to include them").

¶34 We construe RCW 7.70.110 to toll the statute of limitations when a request for mediation is made on the defendant or the defendant's authorized agent. Under this interpretation, the defendant will receive notice that the plaintiff has requested mediation under RCW 7.70.110 and will have an opportunity to assent to the request. This reading of RCW 7.70.110 is also consistent with the procedural informality of the statute. Unlike its companion provision, former RCW 7.70.100, which outlined specific procedures for serving the 90-day notice of intent to sue, RCW 7.70.110 does not contain detailed service procedures. It requires only that the request for mediation be "written" and be made in "good faith." RCW 7.70.110.

¶35 Cacchiotti contends that, even if a request served on a defendant's agent is proper under the statute, no agency relationship existed here. Whether an agency relationship exists is generally a question of fact for the jury. *O'Brien v. Hafer*, 122 Wn. App. 279, 281, 93 P.3d 930 (2004). But the record convinces us that Cacchiotti's insurance representative took responsibility for the defense of the suit from the very beginning. Unruh initially directed her correspondence to Cacchiotti by serving him with the 90-day notice of intent to sue under former RCW 7.70.100. Shortly after, Cacchiotti's insurance representative con-

tacted Unruh's counsel purporting to act on Cacchiotti's behalf, and they began discussing resolution of the case.[11] Unruh's counsel followed up on their discussions by directing a letter to the representative and requesting mediation under RCW 7.70.110. The insurance representative then responded by letter, stating, "You have requested mediation based on RCW 7.70.100 and, therefore, *we* agree that the statute of limitations is tolled for one year by RCW 7.70.110." CP at 318 (emphasis added). The parties later agreed to a mediation date, but Cacchiotti ultimately decided not to mediate.

¶36 Unruh persuasively argues that the only reasonable conclusion, based on the course of correspondence and Cacchiotti's assent to the mediation, is that the insurance representative was acting as Cacchiotti's agent. Cacchiotti counters that authority to act as an agent cannot be inferred from the acts of the insurance representative alone. But, Cacchiotti's argument would essentially require Unruh to prove what only Cacchiotti knows—whether the agent who initially responded to Unruh's notice of intent to sue was actually representing Cacchiotti. We reject Cacchiotti's attempt to undermine the agency relationship between him and the insurer responsible for providing his defense. Unruh's request for mediation tolled the statute of limitations for one year, and her filing of the lawsuit in September 2007 was therefore timely.[12]

II. Timeliness of Unruh's Claim under the Statute of Repose

¶37 Cacchiotti argues that, even if Unruh filed her claim within the statute of limitations, it is barred by the statute

---

[11] Notably, Cacchiotti does not question the representative's authority to act on his behalf in responding to the notice of intent to sue.

[12] Because Unruh's claim was timely under the three-year limitations period, we need not address the arguments raised under the one-year discovery period with regard to whether there are genuine issues of material fact concerning when Unruh or her parents knew she had a cause of action.

of repose. RCW 4.16.350(3) sets a maximum eight-year period for filing a medical malpractice lawsuit. The statute provides that "in no event shall an action be commenced more than eight years after [the] act or omission." RCW 4.16.350(3).

¶38 In *DeYoung*, this court struck down a prior iteration of the medical malpractice statute of repose, holding that it violated the privileges and immunities clause of article I, section 12 of the Washington State Constitution. *DeYoung*, 136 Wn.2d at 150. The legislature reenacted the statute on June 7, 2006. LAWS OF 2006, ch. 8, §§ 301-02.

¶39 Cacchiotti argues that the statute of repose applies "retroactively" to Unruh's claim such that the eight-year period began running in August 1999, on the last date of the alleged act or omission.[13] In Cacchiotti's view, then, the statute of repose expired in August 2007, one month before Unruh commenced her lawsuit. Unruh responds that the statute of repose began running on the date it was enacted, June 7, 2006, which means the repose period does not expire until June 2014.

¶40 As explained previously, when a claim accrues before a new statute of limitations goes into effect, the new limitations period begins to run on that claim from the effective date of the statute's enactment. *Hanford*, 112 Wash. at 662. This rule applies equally to statutes of limitation and statutes of repose. *See 1000 Virginia Ltd. P'ship*, 158 Wn.2d at 584 ("Regardless of how the statute is characterized [i.e., as a statute of limitation or a statute of repose], it is presumed to run prospectively, as are all statutes."). Running the new limitations period from the date of enactment ensures that "the full time allowed by the

---

[13] As discussed *supra* note 8, Cacchiotti does not characterize his argument in terms of "retroactivity," although his position is that the statute of repose began operating seven years prior to its enactment.

new statute is available to the [plaintiff]." *Hanford*, 112 Wash. at 662.[14]

¶41 We assume Unruh's claim accrued with the removal of her braces in August 1999. At that time, no statute of repose existed, as this court's 1998 decision in *DeYoung* struck down the prior version of the statute of repose. While the legislature reenacted the statute of repose in June 2006, we cannot agree with Cacchiotti that the new repose period began running seven years before the statute was enacted. Rather, the statute of repose applies to Unruh's claim prospectively from the date of its enactment on June 7, 2006, meaning the eight-year repose period began running on that date. Because the repose period will not expire until June 2014, the newly reenacted statute of repose does not bar Unruh's claim.

¶42 Amicus WSMA et al. contends that the general rule of prospective application should not govern here because the legislature intended the statute of repose to apply retroactively. WSMA et al. relies on a statement of legislative intent contained in the 2006 reenactment to the statute of repose: "The legislature . . . intends that the eight-year statute of repose reenacted by section 302 of this act be applied to actions commenced on or after [June 7, 2006]." LAWS OF 2006, ch. 8, § 301. Though no other evidence of legislative intent is provided, WSMA et al. believes that this statement alone indicates clear intent that the statute of repose apply retroactively.

¶43 A limitations provision will not be given retroactive effect "unless it appears that such was *clearly* the legislative intention." *Hanford*, 112 Wash. at 661 (emphasis added); *see also Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 223, 173 P.3d 885 (2007) (recognizing that the presumption

---

[14] The three-year limitations period and the one-year discovery period under RCW 4.16.350(3) do not run from the date of the 2006 legislation because those limitations periods are not new. Unlike the nontolling provision of RCW 4.16.190 and the repose provision of RCW 4.16.350(3), the three-year and one-year limitations periods were in effect long before Unruh's claim accrued.

of prospective application "can only 'be overcome if . . . the Legislature explicitly provides for retroactivity' " (quoting *State v. T.K.*, 139 Wn.2d 320, 332, 987 P.2d 63 (1999))). The legislative statement here does not evince a clear intent that the statute of repose apply retroactively. The quoted statement indicates that the statute of repose should apply "to actions commenced on or after [June 7, 2006]," but it does not specify whether the statute should apply prospectively or retroactively to such actions. Laws of 2006, ch. 8, § 301. At best, the statement is ambiguous. Under the general rule discussed above, we presume the new limitations period applies prospectively. And if the claim accrued before the date of enactment, the limitations period begins to run from the date of enactment. The legislature's ambiguous statement of intent with regard to the newly reenacted statute of repose is not enough to overcome this presumption.

¶44 Even if we agreed with Cacchiotti that the statute of repose began to run in August 1999, Unruh's claim would still survive. Under former RCW 4.16.190, a statute of repose is tolled during a plaintiff's minority. *Gilbert*, 127 Wn.2d at 376 (citing *Merrigan*, 112 Wn.2d at 716). Because the 2006 nontolling amendment has no effect on the tolling that occurred during Unruh's minority, the statute of repose could not begin to run until Unruh turned 18 on January 3, 2004. Thus, even under Cacchiotti's theory, the earliest the repose period could expire on Unruh's claim is January 2012.[15]

CONCLUSION

¶45 Unruh timely filed her claim within the statute of limitations. The 2006 nontolling amendment to RCW 4.16.190 does not eliminate tolling during Unruh's minor-

---

[15] Because we hold that the statute of repose does not bar Unruh's claim, we need not reach Unruh's alternative arguments that the statute of repose violates the separation of powers doctrine and the privileges and immunities clause of article I, section 12.

ity. Unruh's notice of intent to sue and request for mediation effectively tolled the statute of limitations until she filed her lawsuit in September 2007.

¶46 Nor is Unruh's claim barred by the statute of repose. The statute of repose applies prospectively from the date of its enactment in 2006, meaning the eight-year period began running on that date. Even if the statute of repose began to run when Unruh's claim accrued in August 1999, Unruh's status as a minor immediately tolled the repose period under former RCW 4.16.190. We reverse the trial court's order of summary judgment and remand for further proceedings consistent with this opinion.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and WIGGINS, JJ., concur.