FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 8, 2025

*Stępec, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 8, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| M.R. | No. 102899-7 |
| Petitioner, | En Banc |
| v. | |
| State of Washington et al. | Filed: May 8, 2025 |
| Respondent. | |

WHITENER, J. – RCW 4.16.340 is Washington's statute of limitations law that covers claims and causes of actions arising from intentional childhood sexual abuse. RCW 4.16.340 covers "[a]ll claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse." RCW 4.16.340(1). The issue in this case is whether the statute covers claims of continuing sexual abuse that originate during the victim's childhood years and that extend into their adulthood years. The trial court found RCW 4.16.340 applied in the context where it was impossible to segregate the harm

and where the events occurred in a continuous series. The Court of Appeals reversed, concluding that RCW 4.16.340 does not apply to claims that arise from acts of sexual abuse that occur after the victim turns 18 years old. We reverse the Court of Appeals.

We hold that RCW 4.16.340 *does not preclude* complainants from bringing claims of sexual abuse that *originate* from childhood sexual abuse and that extend into the victim's adulthood.

FACTS AND PROCEDURAL HISTORY

I.      Factual Background

In 2000, M.R. was a 17 year old high school student and basketball player. Clerk's Papers (CP) at 121-22, 191. That year, M.R. participated in a recruitment basketball tournament for players who were trying to get accepted to college basketball teams. The event was hosted by Matt Williams, who managed a gym in Reno, Nevada, where the recruitment event was held. CP at 191. At the event, Williams introduced M.R. to Cody Butler, a women's basketball coach at Yakima Valley Community College (YVCC). CP at 24, 191. During the event, both Williams and Butler "gawk[ed]" at M.R. CP at 191-92. Without M.R.'s consent, Butler placed his hand on M.R.'s stomach and slid his hand down to the fringe of her pubic area.

CP at 191-92, 203-05.[1] As Butler touched M.R., he remarked, "You don't see that like that every day. Not very many girls have that." CP at 123. Butler and Williams made unwanted comments about M.R.'s physique, including her buttocks and chest. CP at 123, 192. Butler commented that he "liked the way [M.R.] was built," to which Williams responded, "I told you I had a girl for you." CP at 123.

The following year, Butler invited M.R. to visit YVCC. At the time of her visit, M.R. was 18 years old. CP at 123-26. Butler continued to make inappropriate sexual comments about team members' bodies. For example, he commented on their "asses" and "tits." CP at 123-26. He would also "put his body on" M.R.'s under the guise of performing drills or exercises for the other team members to observe. He would stand next to M.R. during practices and place his hand on the small of her back. CP at 123-26.

The following week, Butler offered M.R. a basketball scholarship. At the time, M.R. was living in Nevada. Butler requested that M.R. arrive on campus a month before the school year was due to begin so that she could get "some extra practice time." CP at 127. M.R. complied even though she did not have the money for food and she also had no family in Washington at the time. CP at 127, 129, 247.

---

[1] The question of whether this constitutes child sexual abuse as defined by RCW 4.16.340(5) will be litigated on remand.

During her time at YVCC, Butler and M.R.'s relationship continued to display hallmarks of sexually inappropriate behavior. M.R. recalled Butler providing her alcohol and consuming it with her on numerous occasions. CP at 127-29. He would ask M.R. to massage him and to be his masseuse. CP at 127-29. During one-on-one weightlifting sessions, Butler made comments about M.R.'s lack of a chest and promised to "give [her] an ass" through weightlifting exercises. CP at 127-28. During these sessions, it was not uncommon for Butler to physically pull M.R. into his groin, pull her down on his lap, and thrust his erect penis against her. CP at 127-29. Butler would also invite M.R. to his home after practice under the guise of something basketball related but then demand a massage. CP at 127-28. Butler would invite M.R. to recruitment events under the pretext of providing her with leadership opportunities. CP at 139-40. During these trips, Butler would take M.R. to nice restaurants and make sexual comments about the other players' bodies. CP at 126, 130, 140. During one trip, Butler took M.R. to Victoria's Secret and commented to her about how she would look in certain pieces. CP at 140. He also purchased a perfume for her after telling her that it "turned him on." CP at 140. Throughout M.R.'s time at YVCC, Butler would also demand that M.R. respond to his late night, lengthy phone calls and demand that she not date anyone. CP at 129. In 2003, after about two years at YVCC, M.R. transferred to a four-year college in

Nevada. In 2004, Butler asked M.R. to visit him at a bar in Nevada. CP at 134. While M.R. was drunk, Butler had sex with her. CP at 134.

According to M.R., Butler's alleged abuse had an enormous impact on the course of her life. M.R. developed substance abuse issues, entered into abusive relationships, developed an eating disorder, was homeless, and was in prison for a while. CP at 192-93, 200-01, 204-05, 277, 295-98. After her release from prison, in 2012, M.R. eventually found stability in her life. She went back to school and earned a master's degree. M.R. now has a full-time job, is married with three children, and is in therapy. CP at 192-93.

In 2018, the Federal Bureau of Investigations publicized an investigation inquiry into allegations of Matt Williams' and Cody Butler's sexual misconduct with young female athletes. CP at 133, 137, 192. It was during this time, while in therapy, that M.R. began drawing connections between her experiences of childhood sexual abuse and her injuries. CP at 193, 294-95.

II.     Procedural History

In 2019, M.R. sued the State of Washington, Yakima Valley Community College, and Cody Butler for numerous claims arising from sexual abuse, including negligence, sexual discrimination, and negligent infliction of emotional distress.

Against Butler individually, M.R. sued for assault. Initially, M.R.'s claims were limited to 2001 to 2003, incidents that occurred when M.R. was 18 years old and older. M.R. later amended her claims to include the unwanted abdomen touching incident that occurred when she was 17 years old.

The State in its motion for summary judgment argued that M.R.'s claims should be time barred because they exceeded the three-year statute of limitations in RCW 4.16.080(2). The State argued that the statute did not apply to the sexual abuse that M.R. suffered after turning 18 years old. M.R. asserted that her allegations that included acts of sexual abuse that occurred when M.R. was a minor as well as acts that occurred when she was 18 years old and older were timely. The trial court considered testimony from expert witnesses that Butler's act of childhood sexual abuse and the sexual abuse that occurred after M.R. turned 18 years old were parts of one continuous experience. The trial court denied the State's motion for summary judgment and in its oral ruling explained that "with experts agreeing that it's impossible to segregate the harm, the court thinks of this as a continuous series of events and believes it is prudent to apply the childhood sex abuse statute of limitations to the events." Verbatim Rep. of Proc. (VRP) at 36.

The Court of Appeals accepted review on the statute of limitations issue. *M.R. v. State*, No. 56781-4-II, slip op. at 8 (Wash. Ct. App. Dec. 12, 2023) (unpublished),

https://www.courts.wa.gov/opinions/pdf/D2%2056781-4-II%20Unpublished%20Opinion.pdf. The issue presented for review was whether RCW 4.16.340 applies to allegations of sexual abuse that began when plaintiff was a minor and continued into adulthood in light of agreement from the State expert and M.R.'s expert that the injury cannot be segregated from the series of events reported. VRP at 36; CP at 373-74. The Court of Appeals reversed the summary judgment denial and remanded for further proceedings. *M.R.*, slip op. at 15. The court concluded that the plain language of RCW 4.16.340 indicates that the statute of limitations applies only to claims based on acts of childhood sexual abuse occurring *before* the plaintiff turns 18 years old. *Id*. at 14. Although the court explicitly declined to reach the issue of causation, it then rejected M.R.'s argument that the touching incident that occurred when she was 17 years old could have caused the abuse that occurred when she was 18 years old and older. *Id*. at 12 (explaining that "even though an act of grooming may facilitate later abusive acts, the grooming does not *cause* the subsequent abusive act. The later act is an independent intentional act"), 14-15.

ISSUES

1.  Does RCW 4.16.340 apply to claims of sexual abuse that stem from childhood sexual abuse and continue into the victim's adulthood?

2.  Did the Court of Appeals err in addressing the "causation issue"?

ANALYSIS

We review issues of statutory interpretation de novo. *City of Pasco v. Pub. Emp't Rels. Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). In interpreting statutes, our "fundamental objective is to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10. In determining plain meaning, courts may look at "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id*. at 11. If the statute does not define a term, we may determine its plain meaning using a standard dictionary. *State v. Bahl*, 164 Wn.2d 739, 754, 193 P.3d 678 (2008). However, if a statute is subject to two or more reasonable interpretations, it is ambiguous and courts may consider legislative history and the

"circumstances surrounding the enactment of the statute." *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 312, 268 P.3d 892 (2011).

1. Does RCW 4.16.340(1) provide a mechanism for redress of sexual abuse that stems from childhood sexual abuse but carries on into the victim's adulthood years?

RCW 4.16.340 is a special statute of limitations law that applies to civil actions for injuries resulting from childhood sexual abuse. *Wolf v. State*, 2 Wn.3d 93, 103-04, 534 P.3d 822 (2023).

RCW 4.16.340 reads:

(1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse that occurred before June 6, 2024, shall be commenced within the later of the following periods:

(a) Within three years of the act alleged to have caused the injury or condition;

(b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or

(c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:

PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.

(2) The victim need not establish which act in a series of continuing sexual abuse or exploitation incidents caused the injury complained of, but may compute the date of discovery from the date of discovery of the last act by the same perpetrator which is part of a common scheme or plan of sexual abuse or exploitation.

….

(5) As used in this section, "childhood sexual abuse" means any act committed by the defendant against a complainant who was less than eighteen years of age at the time of the act and which act would have been a violation of chapter 9A.44 RCW or RCW 9.68A.040 or prior laws of similar effect at the time the act was committed.

The Washington Legislature amended RCW 4.16.340 in 1991 to include legislative intent findings. The legislature found:

(1) Childhood sexual abuse is a pervasive problem that affects the safety and well-being of many of our citizens.

(2) Childhood sexual abuse is a traumatic experience for the victim causing long-lasting damage.

(3) The victim of childhood sexual abuse may repress the memory of the abuse or be unable to connect the abuse to any injury until after the statute of limitations has run.

(4) The victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs.

(5) Even though victims may be aware of injuries related to the childhood sexual abuse, more serious injuries may be discovered many years later.

(6) The legislature enacted RCW 4.16.340 to clarify the application of the discovery rule to childhood sexual abuse cases. At that time the legislature intended to reverse the Washington supreme court decision in *Tyson v. Tyson,* 107 Wn.2d 72, 727 P.2d 226 (1986).

It is still the legislature's intention that *Tyson v. Tyson,* 107 Wn.2d 72, 727 P.2d 226 (1986) be reversed, as well as the line of cases that state that discovery of any injury whatsoever caused by an act of childhood sexual abuse commences the statute of limitations. The legislature intends that the earlier discovery of less serious injuries should not affect the statute of limitations for injuries that are discovered later.

LAWS OF 1991, ch. 212, § 1.

M.R. contends that RCW 4.16.340's only limitation is that it provides for recovery for damages for injuries that stem from childhood sexual abuse. M.R.'s Suppl. Br. at 15-20. M.R. argues that the continuing sexual abuse she suffered during her adulthood years by Butler is an "injury" of the childhood sexual abuse inflicted by Butler. *Id*. The word "injury" is not defined in .340(1), and thus we should construe the term to contain all meanings "'well known to the common law'" to define it. *Schwartz v. King County*, 200 Wn.2d 231, 239-40, 516 P.3d 360 (2022) (quoting *State v. Dixon*, 78 Wn.2d 796, 804, 479 P.2d 931 (1971)). The legislative intent findings recognize that injuries of childhood sexual abuse can include "long-lasting damage" and that "more serious injuries may be discovered many years later" from the date of the abuse.  LAWS OF 1991, ch. 212, § 1(2), (5).

The State argues that such a construction of the term "injury" improperly conflates injury with a cause of action and expands the term "injury" beyond its ordinary meaning. Resp'ts' Suppl. Br. at 18-19. The State argues that because the

words "injury" and "cause of action" are used in the same sentence in the statute, they cannot have the same meaning. *Ronald Wastewater Dist. v. Olympic View Water & Sewer Dist.*, 196 Wn.2d 353, 366, 474 P.3d 547 (2020) (we can infer when a word is used in one instance and another word in another instance that there is a legislatively intended difference in meaning).

Here, the issue is whether RCW 4.16.340 applies to claims of sexual abuse that are predicated on childhood sexual abuse but continue into the victim's adulthood.[2] Contrary to the dissent's assertion, the question here is not whether this statute extends the statute of limitations for adulthood sexual abuse claims, but rather the question is whether the statute can apply to claims of continuing sexual abuse that are predicated on childhood sexual abuse that continues into the victim's adulthood. Dissent at 3.

a. Plain Language

The "fundamental objective" of statutory interpretation is to "ascertain and carry out the Legislature's intent." *Campbell & Gwinn*, 146 Wn.2d at 9. If a statute's meaning is plain on its face, courts will give effect to that meaning as an expression of legislative intent. *Id*. at 9-10. To determine the "plain meaning" of a statute, we

---

[2] We need not decide whether continuing sexual abuse is a cognizable injury under RCW 4.16.340.

look to the text, the context of the statute, related statutory provisions, and the statutory scheme as a whole. *State v. Haggard*, 195 Wn.2d 544, 548, 461 P.3d 1159 (2020) (citing *Campbell & Gwinn*, 146 Wn.2d at 9-12). We give an undefined term "'its plain and ordinary meaning unless a contrary legislative intent is indicated.'" *Id*. (quoting *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920-21, 969 P.2d 75 (1998)).

The plain language of RCW 4.16.340 indicates that it does not preclude complainants such as M.R. from bringing sexual abuse claims that stem from childhood sexual abuse that continues into the victim's adulthood. Here, we are primarily concerned with subsections (1), (2), and (5) of RCW 4.16.340.

Subsection (1) controls the scope of the statute's applicability. The subsection is broadly written. This court has consistently interpreted the expansive scope of subsection (1) as indicative of the legislature's intent to provide victims of childhood sexual abuse with broad protections. It applies to "'[a]ll claims or causes of action'" brought by "'any person'" provided the claims are "'based on intentional conduct'" involving "'childhood sexual abuse.'" *C.J.C. v. Corp. of Cath. Bishop of Yakima*, 138 Wn.2d 699, 709, 985 P.2d 262 (1999) (plurality opinion) (alteration in original) (quoting RCW 4.16.340(1)). Nowhere in subsection (1) does the statute prohibit application to sexual abuse claims of M.R.'s type, or any sort of claim or cause of

action for that matter. In *C.J.C.*, this court determined that "under the plain meaning of the statute, an action is 'based on intentional conduct' if intentional sexual abuse is the starting point or foundation of the claim." *Id.* (holding the statute applies to *all* tort claims including negligence actions against individuals and entities that are based on intentional acts). This court recently reaffirmed this reading in *Wolf*, when it reasoned that "[a]s long as the predicate of that harm [the injuries discovered later in life] is the childhood sexual abuse" and the "gravamen of the claim is the childhood sexual abuse," then RCW 4.16.340 "provides a mechanism for redress." 2 Wn.3d at 105-08 (citing RCW 4.16.340(1); *C.J.C.*, 138 Wn.2d at 709-10, 712). An act of "intentional [childhood] sexual abuse is the *predicate* conduct upon which" plaintiff's negligence claim is based. *C.J.C.*, 138 Wn.2d at 709 (emphasis added). Here, the expansive language of subsection (1) does not preclude M.R. from bringing her claim of sexual abuse against Butler, as long as it is predicated on at least an intentional act of childhood sexual abuse.

Subsection (1) also states explicitly that it provides recovery for damages for injuries "as a result of" childhood sexual abuse. The phrase "as a result of" is not defined in the statute, so we "give the term its plain and ordinary meaning ascertained from a standard dictionary." *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002). *Black's Law Dictionary* defines "result" as "[a] consequence, effect,

or conclusion" and "[t]hat which is achieved, brought about, or obtained." BLACK'S LAW DICTIONARY 1576 (12th ed. 2024). We must also read "as a result of" in the context of the entire provision and the whole statute, "not in isolation or subject to all possible meanings found in a dictionary." *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008). Considering the ordinary meaning of "result" and the context of the entire statute, nothing in the plain language of the statute requires the complainant to prove anything beyond a showing that the alleged injury was a consequence or effect of the act of alleged childhood sexual abuse. The statute does not impose on complainant proof of causation between the injury and the act of childhood sexual abuse.

The above reading of "as a result of" in subsection (1) makes sense when considering the nature of the statute overall. The court erred in construing "as a result of" to require complainant to show her injury was caused by the act of childhood sexual abuse. RCW 4.16.340 is a statute of limitations law, it is not a law that creates a civil cause of action for child sexual abuse. A plain reading of the statute overall indicates as much. First, the statute is titled "Actions *based on* childhood sexual abuse," denoting that it is a law that applies to already existing causes of actions that are based on childhood sexual abuse. RCW 4.16.340 (emphasis added). Second, the statute directly references criminal statutes that provide guidance on whether child

sexual abuse was afoot in the underlying act of abuse, such as RCW 9.68A.040 and the laws under chapter 9A.44 RCW. RCW 4.16.340(5). Finally, each provision of the statute focuses on how to calculate the statute of limitations and how to determine when the special statute of limitations applies.

The Court of Appeals misconstrued "as a result of" in subsection (1) when it concluded that "grooming" cannot be the cause of a subsequent act of sexual abuse that occurs when the minor becomes an adult. This action required a showing of causation between the act of childhood sexual abuse and the injury. The Court of Appeals erred in reaching this conclusion as it is a factual question beyond the scope of this appellate review. Even if construed as part of its legal reasoning in reaching the statute of limitations question, there is no legal authority on point.

The plain meaning of subsection (2) also accounts for M.R.'s type of claim. Subsection (2) recognizes that in cases of "continuing sexual abuse or exploitation incidents" that "caused the injury complained of," the complainant "may compute the date of discovery from the date of discovery of the last act by the same perpetrator." RCW 4.16.340(2). This language reflects the legislature's intent to account for situations where the abuse is of a continuous nature and it would be difficult to establish the date of the discovery of the act that gave rise to the injury

and therefore the legal claim. Nowhere in the subsection is it required that the alleged continuing scheme of abuse pertain only to abuse suffered when the plaintiff is a minor. The provision does not distinguish between abuse that occurs solely within the victim's childhood years and abuse that is a result of childhood abuse that extends into the victim's adulthood. Where the legislature omits language from a statute, this court will not read language into it. *State v. Cooper*, 156 Wn.2d 475, 480, 128 P.3d 1234 (2006). Read in the context of the statute overall, this reading is harmonious with subsections (1) and (5). It does not override subsections (1) or (5) because the continuous scheme of abuse alleged under subsection (2) must still be predicated on intentional childhood sexual abuse.

The Court of Appeals and the State rely heavily on subsection (5) to explain why the statute cannot cover continuing sexual abuse claims. However, subsection (5) simply defines "childhood sexual abuse" as acts committed against a victim who was less than 18 years old at the time of the act and would have been in violation of a sexual abuse law in effect at the time. It defines "childhood sexual abuse"; it does not limit the mainspring provision of this statute, subsection (1), which covers all claims or causes of action based on an intentional act of childhood sexual abuse. To accept the State's narrow interpretation of subsection (5) would undo the act's broad application to *all* claims or causes of action that are based on an intentional act of

childhood sexual abuse. We have already held that RCW 4.16.340(1) controls the scope of the statute's applicability and that the statutory definition in subsection (5) limits only the specific predicate sexual conduct on which all claims or causes of actions must be based. For instance, in *C.J.C.*, we rejected the argument that subsection (5) limits the act's applicability to only claims brought by a victim against the actual perpetrator of the alleged childhood sexual abuse. 138 Wn.2d at 709-13. In *DeYoung v. Providence Medical Center*, although not engaging in a statutory construction per se, we also recognized the statute contemplates negligence claims where the "gravamen of the action" is childhood sexual abuse or where "child sexual abuse forms the grounds for the action." 136 Wn.2d 136, 146-47, 960 P.2d 919 (1998). If we find that the definition of "childhood sexual abuse" in subsection (5) limits the type of claim that a complainant can bring, then it would deny subsection (1), the mainspring provision, its ordinary meaning and create inconsistencies in how the act operates as a whole. Nowhere in the act can we infer that the legislature intended to carve out sexual abuse claims that extend into adulthood as an exception of "[a]ll claims or causes of action based on intentional conduct … as a result of childhood sexual abuse." RCW 4.16.340(1).

Other jurisdictions have reached similar conclusions with regard to analogous special statute of limitations laws for actions based on childhood sexual abuse.

*Tietge v. W. Province of Servites, Inc.*, 55 Cal. App. 4th 382, 387 64 Cal. Rptr. 2d 53 (1997) (holding that when "the alleged childhood sexual abuse is part of a course of conduct that continues beyond childhood, the limitations period of [statute section similar to RCW 4.16.340] must apply."); *see also John Doe H.B. v. M.J.*, 59 Kan. App. 2d 273, 290, 482 P.3d 596 (2021) (holding that a similar statute to RCW 4.16.340 "applies broadly to any action for damages, so long as those damages flow from—were 'suffered as a result of'—childhood sexual abuse"), *aff'd* 315 Kan. 310, 508 P.3d 368 (2022).

A plain reading of RCW 4.16.340 indicates it applies broadly to all claims or causes of action that are predicated on at least *an* intentional act of childhood sexual abuse. The statute is unambiguous, and we need not resort to legislative history for purposes of statutory interpretation. *Five Corners Fam. Farmers*, 173 Wn.2d at 305-06. M.R. is not precluded from bringing her claims of sexual abuse.

b. Legislative History

Even though a review of the legislative history of RCW 4.16.340 is not required, here, the legislative history is insightful and it shows that the legislature intended for the law to have broad application without regard to the type of claim brought, so long as the claim is based on intentional childhood sexual abuse.

The State argues that to apply the statute of limitations to M.R.'s claim would expand application of the statute beyond the legislature's intent. Resp'ts' Suppl. Br. at 18. Conversely, M.R. argues that her interpretation of the statute is consistent with the legislature's stated intent to provide broad protections for victims of childhood sexual abuse. The legislative history on RCW 4.16.340 does not address the precise issue before this court. However, it does indicate that the legislature intended to account for the indefinable time that it can take for victims of childhood sexual abuse to come to terms with their abuse and their injuries, and to understand the connections between those two things.

RCW 4.16.340 was enacted in 1988 to alter the civil statute of limitations for bringing claims involving childhood sexual abuse. 1989 FINAL LEGISLATIVE REPORT, 51st Wash. Leg., at 288. The legislature observed that victims of childhood sexual abuse may be unable to report abuse, to bring an action on their own, or may not be aware that their abuse caused their injuries until many years afterward. *Id*. The legislature passed this statute following this court's decision in *Tyson*, which held that the discovery rule, which tolls the statute of limitations until the plaintiff discovers or reasonably should have discovered a cause of action, did not apply in intentional torts when the victim has blocked the incident from memory during the entire time of the statute of limitations. 107 Wn.2d 72. The legislature recognized

that victims may repress memories and later have a delayed reaction to the abuse when they remember or come to terms with the memories. Furthermore, victims may experience more serious trauma many years after the abuse, even if they also suffered known but less serious trauma closer to the time of the abuse. The legislature thus intended to avoid scenarios where victims would be foreclosed from suing for more severe injuries developed later in life merely because they also remembered suffering injuries from the abuse closer to the time of the abuse. 1989 FINAL LEGISLATIVE REPORT, at 288.

The legislative history weighs in support of M.R.'s interpretation of RCW 4.16.340. The legislature sought to ensure that the statute pertained to all types of claims that could be brought, so long as they were a result of childhood sexual abuse. Nothing in the legislative history suggests that RCW 4.16.340 intended to address the issue of causation in regard to whether the predicate act of childhood sexual abuse caused the injuries alleged. Lawmakers wanted to create an avenue for victims like M.R. The legislature explicitly recognized that reaching the age of majority does not undo the concern that victims may take many years to learn of their abuse, to learn of their injuries, and to learn of the connection between their abuse and injuries. This is why the legislative history notes that definable statute of limitations cannot be predetermined for victims of childhood sexual abuse. The legislature recognized

that victims experience injuries in a complex manner. Some victims may not be aware of injuries until much later in life, even when those injuries may be more serious than other injuries already known to the victim. LAWS OF 1991, ch. 212, § 1(5). The victim might be fully aware of their injuries and their abuse but not discover the connection between the two until much later in life. *Id*. § 1(4). The legislature acknowledged that injuries suffered from childhood sexual abuse can cause "long-lasting damage." *Id*. § 1(2). Thus, the legislature went to great lengths to indicate that injuries can take many shapes and forms and manifest in complex ways.

The legislative history also weighs in favor of finding that M.R. would be able to bring her claim of continuing sexual abuse under the statute, so long as it is based on intentional childhood sexual abuse.

2. The Court of Appeals erred in reaching a factual finding on the issue of causation

The Court of Appeals erred in reaching a factual finding on the issue of causation when it concluded that "even though an act of grooming may facilitate later abusive acts, the grooming does not *cause* the subsequent abusive act. The later

act is an independent intentional act." *M.R.*, slip op. at 12. The court's conclusion that "grooming does not cause the subsequent abusive act" is troubling.

The appellate court exceeded its limited role. The certified issue was whether RCW 4.16.340 applied to all of M.R.'s allegations of sexual abuse. The court acknowledged this limitation in its order. *Id*. at 15. The court however, engaged in improper fact-finding when it suggested that M.R.'s childhood sexual abuse could not have caused the subsequent abuse she suffered under Butler. *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 54, 534 P.3d 339 (2023) (explaining that as a rule, appellate courts generally cannot engage in fact-finding and especially not when there is an incomplete record and neither party has had the chance to brief or argue the element of a claim). The trial court's oral ruling specifically relied on the experts' finding that M.R.'s injury could not be segregated from the series of events reported and that application of the statute of limitations rule was appropriate "in the context of a series of events by the same alleged perpetrator." VRP at 35-36; CP at 373-74.

In addition, to further add to the contradiction, the Court of Appeals, in a footnote, stated that M.R. is free to argue to the jury that the injuries she suffered were proximately caused by the acts that occurred before she turned 18, including in conjunction with the entire course of conduct of incidents that occurred after she

turned 18 years old. *M.R.*, slip op. at 14 n.3. Regardless, the Court of Appeals' conclusion that grooming cannot cause subsequent abusive acts was beyond the scope of its review.

3. RCW 4.16.340 accounts for the continuing tort doctrine

The amicus curiae brief submitted by the Washington Association for Justice Foundation raised the question of the continuing tort doctrine. We have declined to address issues raised by amici where they are inadequately briefed. *In re Dependency of D.L.B.*, 186 Wn.2d 103, 123 n.14, 376 P.3d 1099 (2016); *see also State v. Gonzalez*, 110 Wn.2d 738, 752 n.2, 757 P.2d 925 (1988) (courts need not reach issues raised only by amici). M.R.'s supplemental brief raises the continuing tort doctrine in a footnote and argues that the court's interpretation of RCW 4.16.340 would require her to split her claim. M.R.'s Suppl. Br. at 26 n.5. The State's supplemental brief is silent on this issue. M.R. argues that an interpretation of the statute that avoids claim splitting also avoids the unjust and absurd result of insulating defendants from liability for continuing abuse and provides victims of childhood sexual abuse with a remedy for one of the most severe forms of injury: continuing and escalating sexual abuse beyond their childhood years. *Id*. at 23-30.

Washington has recognized the continuing tort doctrine in certain cases involving continuous violations where a literal application of the statute of limitations would result in injustice. *Samuelson v. Freeman*, 75 Wn.2d 894, 900, 454 P.2d 406 (1969) (holding that for medical malpractice of a continuous and uninterrupted nature, the statute of limitations does not begin to run until the treatment for that particular illness or condition has been terminated); *see also Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 220, 543 P.2d 338 (1975) (explaining that in circumstances where some harm is sustained but the plaintiff is unaware of it, a literal application of the statute of limitations may result in grave injustice). In these cases, the continuing tort doctrine is applied for statute of limitations purposes when no single incident in a chain of tortious activity can fairly or realistically be identified as the cause of significant harm. When at least one act falls within the limitations period, the entire course of conduct does too.

Until today, we have not found that continuing sexual abuse by the same perpetrator constitutes a continuing tort for statute of limitations purposes. Here, M.R.'s sexual abuse claim shares many similar aspects to a continuing tort: the harm suffered was continuous, her relationship with Butler was one involving trust and power, and the acts of abuse are closely related such that it may be unfair to deny her the right to bring the action in a single claim. *Caughell v. Grp. Health Coop.*,

124 Wn.2d 217, 225, 876 P.2d 898 (1994) (finding that course of treatment in medical malpractice was continuous in nature); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 2067, 153 L. Ed. 2d 106 (2002) (finding that in hostile work environment claims, a series of separate acts collectively constitute one unlawful employment practice, regardless of whether some acts fall outside the statutory time period).

The doctrine is noteworthy as subsection (2) of RCW 4.16.340 accounts for the existence of claims involving a common scheme by the same perpetrator. The provision provides relief for a "common scheme or plan of sexual abuse," so long as the claim is "based on" childhood sexual abuse as required by subsection (1). Reading subsections (1) and (2) together suggests the legislature intended to provide protection for sexual abuse of a common scheme so long as the gravamen of the claim is based on childhood sexual abuse. *C.J.C.*, 138 Wn.2d at 709 (holding that an act of intentional childhood sexual abuse is the predicate conduct on which plaintiff's negligence claim is based); *see also Wolf*, 2 Wn.3d at 104 (holding that so long as the predicate of that harm is the childhood sexual abuse, RCW 4.16.340 provides a mechanism for redress).

RCW 4.16.340(2) accounts for claims of sexual abuse that are of a continuous nature and perpetrated by a single perpetrator, suggesting the legislature intended to account for the continuing tort doctrine in the statute's application.

CONCLUSION

RCW 4.16.340 includes claims for continuing sexual abuse that extend into the victim's adulthood, which are based on intentional acts of childhood sexual abuse. We reverse the Court of Appeals.

_____
Whitener, J.

WE CONCUR.

_____
Stephens, C.J.

_____
Yu, J.

_____
Johnson, J.

_____
Montoya-Lewis, J.

_____
González, J.

_____

_____

_____
Díaz, J.P.T.

*M.R. v. State*

No. 102899-7

MADSEN, J. (concurring)—While I concur with the majority, I write separately to explain my interpretation of both the majority and the dissent. My understanding of the majority opinion is that whether the "grooming" that occurred when M.R. was a minor constitutes childhood sexual abuse will determine whether RCW 4.16.340 applies here. This is relevant because the statute applies only to criminal conduct in violation of chapter 9A.44 RCW, RCW 9.68A.040, or other prior laws of similar effect at the time the act was committed. *See* RCW 4.16.340(5). If the conduct that occurred when M.R. was a minor does not meet the definition of "childhood sexual abuse" as defined in the statute, then later criminal conduct occurring during adulthood is not exempt from the normally applicable statute of limitations. However, if it is determined that what happened to M.R. during her childhood does fall under the definition of "childhood sexual abuse," then M.R. may recover for injuries arising from sexual abuse that occurred during adulthood, if a jury finds it to be a continuing crime. If I am correct in my interpretation of the majority's opinion, then I agree.

No. 102899-7
(Madsen, J., concurring)

The dissent, as I understand it, states that RCW 4.16.340 allows for individuals to recover for injuries only that arise from childhood sexual abuse, injuries that can extend into adulthood. However, an individual cannot recover for injuries from sexual abuse that occurred during adulthood after the statute of limitations has run, even if it is part of a continuing crime that extends from one's childhood.

The statute itself provides that

> [t]he victim need not establish which act in a series of continuing sexual abuse or exploitation incidents caused the injury complained of, but may compute the date of discovery from the date of discovery of the last act by the same perpetrator which is part of a common scheme or plan of sexual abuse or exploitation.

RCW 4.16.340(2). Therefore, assuming the conduct at issue meets the definition of "childhood sexual abuse," the legislature did not limit the continuing scheme of abuse to conduct that occurred when the individual was a minor. It is known that sexual abuse can begin during childhood and continue into adulthood. To try to separate the harm arising from sexual abuse that occurred during childhood from that which occurred during adulthood is not only impractical but is not in line with the plain text of the statute, which does not require such a delineation.

With these considerations in mind, I respectfully concur.

_____
Madsen, J.

_____
Stephens, C.J.

2

No. 102899-7

GORDON McCLOUD, J. (dissenting)— RCW 4.16.340 modifies the usual statute of limitations so that child victims of sexual abuse can sue their abusers many years later, after the victims are well into adulthood. RCW 4.16.340 tolls the statute of limitations until the later of one of three triggering events occurs. RCW 4.16.340(1)(a)-(c). The triggering event here is the victim's "discovery" of the injury or injuries inflicted by the child abuse. This provision allows victims to sue their abuser "[w]ithin three years of the time the victim discovered that the act caused the injury for which the claim is brought . . . ." RCW 4.16.340(1)(c).

The majority interprets RCW 4.16.340 as tolling the statute of limitations for both child *and* adult sexual abuse claims if the plaintiff simply alleges that the claims "originate from childhood sexual abuse and extend into the victim's adulthood." Majority at 2.

But adult sexual abuse claims fall outside the scope of this expanded statute of limitations. RCW 4.16.340 applies only to "claims or causes of action based on intentional conduct . . . for recovery of damages for injury suffered as a result of *childhood sexual abuse*." RCW 4.16.340(1) (emphasis added). The intentional conduct specified in this subsection (1) is "childhood" sexual abuse—not adult

1

sexual abuse. And another subsection of the statute, defining "childhood sexual abuse," makes this even clearer: "'childhood sexual abuse' means any act committed by the defendant against a complainant who was *less than eighteen years of age at the time of the act*." RCW 4.16.340(5) (emphasis added). Thus, claims of acts of abuse toward an adult are, by statutory definition, different from claims of "childhood sexual abuse"; hence, acts of sexual abuse toward adults are not covered by this extended statute of limitations.

To be sure, I agree with the majority that RCW 4.16.340 places no limit on the *damages* that a victim of childhood sexual abuse may recover (assuming the victim proves causation). In fact, this statute of limitations recognizes that *damages* from childhood sexual abuse may extend into adulthood. LAWS OF 1991, ch. 212, § 2(1)-(5). As the expert in this case noted, childhood harm may be impossible to segregate from adult harm if the abuse happens in a continuous series from childhood into adulthood. *M.R. v. State*, No. 56781-4-II, slip. op. at 6-7 (Wash. Ct. App. Dec. 12, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056781-4-II%20Unpublished%20Opinion.pdf.

But that does not transform an extended statute of limitations for claims of childhood sexual abuse into an extended statute of limitations for claims of adulthood sexual abuse. It just allows the victim of childhood sexual abuse to seek damages for all of the harms caused by that childhood sexual abuse, even harms extending into adulthood.

I would therefore affirm the Court of Appeals' decision that RCW 4.16.340 tolls the time for filing M.R.'s claims of childhood sexual abuse, but does not toll the time for filing M.R.'s claims of sexual abuse against her when she was an adult.[1]

I respectfully dissent.

ANALYSIS

The question presented by this case is whether RCW 4.16.340's extended statute of limitations applies to claims of adult sex abuse.

This is a question of statutory interpretation, which is a question of law that we review de novo. *Envolve Pharmacy Sols., Inc. v. Dep't of Revenue*, 4 Wn.3d 142, 155, 560 P.3d 839 (2024) (citing *Durant v. State Farm Mut. Auto. Ins. Co.*,

---

[1] As the Court of Appeals ruled, M.R. can "argue to the jury that she is entitled to all damages proximately caused by the act that occurred before she turned 18. And this proximate cause inquiry must be understood in the context of the entire course of conduct, including those incidents that occurred after M.R. turned 18." *M.R.*, No. 56781-4-II, slip. op. at 14 n.3.

3

191 Wn.2d 1, 8, 419 P.3d 400 (2018)). "We begin our statutory interpretation process—with the goal of figuring out the legislature's intent—by starting with the plain language of the statute, in context." *Id.* (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). "We derive 'legislative intent solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole.'" *Id.* (quoting *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 196 Wn.2d 1, 7-8, 468 P.3d 1056 (2020) (citing *First Student, Inc. v. Dep't of Revenue*, 194 Wn.2d 707, 710, 451 P.3d 1094 (2019)). "When a statute's plain language is unambiguous—meaning it is subject to only one reasonable interpretation—we will not resort to other interpretive tools such as legislative history." *Id.* (citing *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 458, 430 P.3d 655 (2018)).

So, starting with the plain language of the statute at issue here, RCW 4.16.340 carves out an exemption from the usual statute of limitations for a specific type of claim: "claims or causes of action based on intentional conduct . . . for recovery of damages for injury suffered as a result of *childhood* sexual abuse." RCW 4.16.340(1) (emphasis added).[2] The statute then explicitly defines

---

[2] *See also Wolf v. State*, 2 Wn.3d 93, 103, 534 P.3d 822 (2023) ("RCW 4.16.340(1) is a special statute of limitations that applies to civil actions for injuries

"childhood sexual abuse" as "any act committed by the defendant against a complainant *who was less than eighteen years of age at the time of the act* and which act would have been a violation of" criminal laws related to childhood sex abuse, "or prior laws of similar effect at the time" of the abuse. RCW 4.16.340(5) (emphasis added) (citing ch. 9A.44 RCW; RCW 9.68A.040).

RCW 4.16.340(1) then specifies the extended time within which a victim of child sex abuse may file suit to "the later of the following [three] periods":

> (a) Within three years of the act alleged to have caused the injury or condition;
> (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought.[3]

This extended statute of limitations also specifies how to determine the "date of discovery":

> The victim need not establish which act in a series of continuing sexual abuse or exploitation incidents caused the injury complained of, but may compute the date of discovery from the date of discovery of the last act by the same perpetrator which is part of a common scheme or plan of sexual abuse or exploitation.

---

resulting from childhood sexual abuse" (citing *B.R. v. Horsley*, 186 Wn. App. 294, 299, 345 P.3d 836 (2015))).

[3] The statute also tolls the time for filing "until the child reaches the age of eighteen years." RCW 4.16.340(1)(c).

5

RCW 4.16.340(2).

The majority relies heavily on dictionary definitions of "injury" and "as a result of" to conclude that adult sex abuse is childhood sex abuse if an abuser starts abusing the victim during that victim's childhood and continues abusing that victim into their adulthood. Majority at 12-18. Because it sees the two types of abuse as equivalent, the majority concludes that RCW 4.16.340's special statute of limitations applies to both. *Id.* at 17-18.

But there's no need to consult a dictionary. The statute itself defines the specific conduct that is covered by the extended statute of limitations: childhood sexual abuse. "[W]here a term is defined [in statute,] we will use that definition." *United States v. Hoffman*, 154 Wn.2d 730, 741, 116 P.3d 999 (2005) (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992)). Under the statute's definition, "childhood sexual abuse" is "any act committed by the defendant against a complainant *who was less than eighteen years of age at the time of the act* and which act would have been a violation of" the laws criminalizing child sexual abuse. RCW 4.16.340(5) (emphasis added). Childhood sexual abuse is not an act committed by the defendant against a complainant who was more than 18 years of age at the time of the act.

And under that statute's definition, the abuser's conduct must also violate a criminal code provision criminalizing sexual conduct with children, not adults, for the extended statute of limitations to apply. *Id*. Acts of childhood sexual abuse certainly violate a criminal code provision criminalizing sexual conduct with children. Acts of sexual abuse against an adult do not.

The plain language of this statute therefore compels the conclusion that sexual abuse of an adult is a serious claim, but it is not a claim subject to RCW 4.16.340's extended limitations period.

Instead, as we have previously stated, RCW 4.16.340(5) defines "the specific predicate sexual *conduct* upon which all claims or causes of action must be based" for the statute to apply. *C.J.C. v. Corp. of Cath. Bishop of Yakima*, 138 Wn.2d 699, 712, 985 P.2d 262 (1999) (plurality opinion). The specific predicate sexual conduct defined in that statutory subsection is acts of sexual abuse against a child—not acts of sexual abuse against an adult.

The majority relies on two cases to argue that the broad language of RCW 4.16.340(1) controls over the limitations created by the definition of "childhood sexual abuse" in RCW 4.16.340(5). Majority at 17 (citing *C.J.C.*, 138 Wn.2d at 709; *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 146-47, 960 P.2d 919 (1998)). As stated above, that subsection (1) states, "All claims or causes of action

7

based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse . . . shall be commenced within the later of" the three previously quoted triggering events. RCW 4.16.340.

The majority's approach reads RCW 4.16.340(1) in isolation. But our controlling precedent compels us to read that statutory subsection in context with the other subsections of that statute, including RCW 4.16.340(5). *See generally Envolve*, 4 Wn.3d at 155.

The majority's approach also misinterprets *C.J.C.* and *DeYoung*. In *C.J.C.*, this court considered whether RCW 4.16.340 applied to negligence claims based on an employer's duty to protect a child from the intentional sex abuse of an employee. 138 Wn.2d at 705. We held that subsection (1) "controls the scope of the statute's applicability," and because that subsection plainly applied to "'[a]ll claims'" based on intentional conduct, a negligence claim against an employer based on its employee's intentional conduct clearly fell within the statute. *Id.* at 708-09 (alteration in original) (quoting RCW 4.16.340(1)).

*C.J.C.* thus interpreted the statute to reach negligence claims but only because the employee's intentional conduct of *childhood* sexual abuse formed the basis for the claim. *C.J.C.* did not interpret subsection (1) to override other provisions in the statute.

8

Neither should we. "[W]e cannot 'simply ignore' express terms" defined by a statute. *Ralph v. Dep't of Nat. Res.*, 182 Wn.2d 242, 248, 343 P.3d 342 (2014) (quoting *In re Parentage of J.M.K.*, 155 Wn.2d 374, 393, 119 P.3d 840 (2005)). "We must interpret a statute as a whole so that, if possible, 'no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Id.* (quoting *State ex rel. Baisden v. Preston*, 151 Wn. 175, 177, 275 P. 81 (1929) (internal quotation marks omitted)). The majority's interpretation of .340(1) violates these rules by making .340(5)'s definition of childhood sex abuse "superfluous, void, or insignificant." *Id.*

The majority also errs in its interpretation of *DeYoung*.  The majority asserts that *DeYoung* allowed any kind of claim under RCW 4.16.340 as long as the "'gravamen of the action' is childhood sexual abuse or where 'child sexual abuse forms the grounds for the action.'" Majority at 17 (quoting *DeYoung*, 136 Wn.2d at 146-47). But the scope of RCW 4.16.340 was not at issue in *DeYoung*. 136 Wn.2d at 146-47. We mentioned section .340 only to identify types of special statutes of limitation created by the legislature. *Id.* As *C.J.C.* recognized, we did "not engag[e] in statutory construction per se" in *DeYoung*. *C.J.C.*, 138 Wn.2d at 709 (citing *DeYoung*, 136 Wn.2d at 147). Thus, *DeYoung* has no controlling precedential value here, either.

But even taking *DeYoung*'s statement at face value, the "gravamen" of a claim of adult sex abuse is not the intentional conduct of childhood sexual abuse—and the latter is the only conduct to which RCW 4.16.340 applies.

CONCLUSION

The majority misinterprets RCW 4.16.340 and strips RCW 4.16.340(5) of any meaning. RCW 4.16.340 creates a special statute of limitations for a finite class of claims—claims of childhood sexual abuse. The statute does not shield claims outside that finite class.

Thus, the question presented here is whether claims of adult sexual abuse fall within the protected class of childhood sexual abuse claims. The answer is no. By definition, the statute does not apply to claims of abuse based on conduct that occurred during the victim's adulthood.

To be sure, childhood sexual abuse can cause lifelong injuries. LAWS OF 1991, ch. 212, § 1(2)-(5). And a victim of childhood sexual abuse can certainly recover for such injuries, as long as that victim's claim of childhood sexual abuse is timely. *Id.* § 2(1)(a)-(c). But that does not mean that the legislature's decision to extend the statute of limitations for acts of sexual abuse against a child can be read as a decision to also extend the statute of limitations for acts of sexual abuse against an adult. Instead, it means that the victim of childhood sexual abuse is

entitled to damages for all the harm that he or she proves—even harm that extends into adulthood.

That is essentially what the Court of Appeals ruled. I would affirm that decision. I therefore respectfully dissent.

_____
Gordon McCloud, J.